IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| **NECOLE CUNNINGHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 3:20-cv-00866 |
| | ) | |
| **CELLCO PARTNERSHIP,** | ) | |
| **d/b/a VERIZON WIRELESS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**TO:** Honorable Eli J. Richardson, United States District Judge

## REPORT AND RECOMMENDATION

This case is before the Magistrate Judge on referral. *See* Orders entered October 8, 2020 (Docket No. 6), and May 1, 2023 (Docket Entry No. 50).[1]

Pending before the Court is Defendant's motion for summary judgment (Docket No. 34), to which Plaintiff has responded in opposition. For the reasons set out below, the undersigned respectfully recommends that the motion for summary judgment be granted and this action be dismissed as to all claims.

### I. FACTUAL BACKGROUND

Necole Cunningham ("Plaintiff") is a resident of Murfreesboro, Tennessee. She began working for Cellco Partnership d/b/a/ Verizon Wireless ("Defendant") in October 1999 and worked as a full-time Customer Service Representative ("CSR") at the Murfreesboro Call Center between

---

[1] The case was originally referred for case management (Docket Entry No. 6) but was later referred as a *pro se* case (Docket No. 50) upon Plaintiff's failure to obtain substitute counsel as she reported to the Court it was her intention to do. *See* Docket Entry Nos. 48 and 49.

1

2016 and November 2018. CSRs receive calls from Verizon Wireless customers and then evaluate and resolve customer concerns over billing, account management, or troubleshooting. In this position, Plaintiff received benefits, including healthcare coverage, as well as short-term and long-term disability benefits (respectively, "STD" and "LTD"). Part-time CSRs were also employed at the Call Center, performing the same work duties but with a lesser benefit package, including a lesser, employer-paid premium amount for health care coverage.

In 2017, Plaintiff requested a leave of absence for a medical issue involving her neck. Defendant approved the leave beginning in June 2017. After several months of leave, Defendant contacted Plaintiff in March 2018 to discuss her return to work. On March 20, 2018, Plaintiff requested more leave from work after she and her physician identified a need for several weeks of additional leave before she could return to work.[2] Defendant accommodated this request, and Plaintiff remained on leave until May 29, 2018. During this time, Plaintiff exhausted all twelve weeks of protected leave under the Family and Medical Leave Act and applied for and received both STD and LTD benefits. Defendant held Plaintiff's position open for her throughout the nearly year-long leave of absence.

On May 29, 2018, Plaintiff requested accommodations in order to return to work. In her request, Plaintiff represented that she could "work no more than 4–6 hours per day and will need a break every 1–2 hours" and estimated that she would need six months of a reduced work schedule.[3] Defendant agreed to temporarily allow Plaintiff to work reduced hours and to "ramp up" to working full-time hours. Defendant also allowed Plaintiff to use a special chair, computer mouse, arm rest, and sit-stand workstation. Defendant continued to classify Plaintiff as a Full-Time CSR even though

---

[2] *See* Exhibit 12 to Plaintiff's Deposition (Docket Entry No. 34-1 at 185-187).

she was only working part-time hours. Defendant did not promise or tell Plaintiff that her reduced work schedule would last longer than six months.

In August 2018, Plaintiff, despite her continued inability to work full-time, requested a transfer to a full-time Home-Based CSR position so that she "could be in the comfort of [her] own home" and "take necessary breaks or lay down as needed."[4] This position allowed for a split-shift work schedule separated by an extended break. Defendant denied the request, asserting that (1) Plaintiff was still not cleared to work full-time and (2) there were not openings for this position at the time of Plaintiff's request.[5] Plaintiff admits that the only accommodation request that Defendant ever denied was this request. Despite denying this request, Defendant permitted Plaintiff to split her part-time hours into a split-shift work schedule, whereby she worked for 2.5 hours, returned to her home for 3 hours, and returned to work for three hours.

In October 2018, Plaintiff's doctor would not clear her to work full-time and could not provide an anticipated time frame for her to return to full-time work even though that was her goal. On October 18, 2018, Plaintiff met with Marloresa Ferguson ("Ferguson") from Defendant's human resources department ("HR") to discuss her status. Defendant proposed two options to Plaintiff in light of her inability to return to full-time work: (1) Defendant would change her job status to part-time, to reflect the hours she actually worked, and would receive lesser work benefits, including the loss of employer based health care premiums, or (2) Plaintiff would continue to receive LTD

---

[3] *See* Exhibit 7 to Plaintiff's Deposition (Docket Entry No. 34-1 at 158-160).
[4] *See* Declaration of Lauren Clanton (Docket Entry No. 34-2) at ¶ 5; Plaintiff's Exhibit 1 (Docket No. 38-1).
[5] *See* Declaration of Clanton at ¶ 5.

benefits based upon her full-time pay rate and benefits but would separate from employment with the option to later reapply for employment.[6] Plaintiff was given two weeks to consider the options.

On November 2, 2018, another meeting between Plaintiff and Ferguson occurred and Plaintiff ultimately chose the LTD option. She was separated from employment that day.[7] On November 5, 2018, Plaintiff e-mailed Ferguson about the matter, requesting to withdraw her decision to take the LTD option. The following day, Ferguson tried unsuccessfully to reach Plaintiff by phone but could not leave a message because Plaintiff's voice mailbox was full. She also sent Plaintiff a response email that day asking her to call HR. There is no evidence that Plaintiff responded to HR's e-mail or otherwise communicated with HR about the matter.[8]

Over the next two years, Plaintiff sought various disability-related benefits by representing her ongoing inability to work. Plaintiff applied for and received Social Security Disability Insurance ("SSDI") benefits. The ALJ found that Plaintiff was "unable to perform her past relevant work" as a customer service representative. Plaintiff was found to qualify for SSDI benefits with an onset date of October 31, 2018. Plaintiff claimed she could not work in her role at Defendant, nor in other positions, throughout the benefits proceeding.

## II. PROCEDURAL BACKGROUND

On March 4, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") that asserted claims of discrimination and retaliation under the

---

[6] Plaintiff states in her response to Defendant's statement of undisputed material facts that she was not told during the October 18 meeting that the LTD benefits option would require a separation from employment. *See* Docket Entry No. 42 at ¶ 72 and ¶ 75. However, in her deposition, she testified that she was told that this option included separation from employment but "didn't have a clear understanding when we met on 10/18 that that meant termination." *See* Docket Entry No. 34-1 at deposition pp. 34-35.
[7] *See* Separation Notice (Docket Entry No. 38-16).
[8] Plaintiff testified in her deposition that "I don't recall if I called back or not." *See* Docket

4

Case 3:20-cv-00866   Document 51   Filed 01/05/24   Page 4 of 19 PageID #: 806

ADA.  *See* Plaintiff's Exhibit 15 (Docket No. 38-15).  The EEOC issued Plaintiff a right-to-sue letter on August 13, 2020.  *Id.*

On October 7, 2020, Plaintiff filed this lawsuit.  *See* Complaint (Docket No. 1).  She subsequently filed an amended complaint (Docket No. 18).  Plaintiff brings claims of failure to accommodate, disparate treatment, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*  Pursuant to a case management order (Docket No. 24), the parties engaged in discovery and pre-trial activity.  Although Plaintiff responded to the summary judgment motion with the benefit of counsel, Plaintiff currently proceeds *pro se*.  Other than Defendant's motion for summary judgment, there are no other motions pending in the case.

### III.  MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendant argues that it is entitled to summary judgment on all of Plaintiff's claims under Rule 56 of the Federal Rules of Civil Procedure. Defendant supports its motion with a memorandum of law (Docket No. 36), a statement of undisputed material facts ("SUMF") (Docket No. 35), Plaintiff's deposition transcript (Docket No. 34-1), and exhibits attached thereto.  Defendant contends that Plaintiff cannot establish a *prima facie* case of disability discrimination because she is not a "qualified individual" for the full-time CSR position due to her inability to work full-time hours and because she is unable to show that Defendant refused to provide her with a reasonable accommodation. Defendant further contends that there is no evidence supporting a claim that Plaintiff was disparately treated because of her disability or retaliated against because she requested reasonable accommodations. Finally, Defendant asserts that Plaintiff's ultimate separation from employment was for a legitimate and non-discriminatory reason, namely that she agreed to accept a separation from employment that was accompanied by LTD benefits.

---

No. 34-1 at deposition p. 37.

In response, Plaintiff files a memorandum of law (Docket No. 41), several documents as exhibits (Docket No. 39), her own declaration (Docket No. 40), and a response to Defendant's SUMF (Docket No. 42). Plaintiff argues that the ability to work full-time hours is not an essential job function of the CSR position and further contends that her request for an at-home position and continued part-time work hours was a reasonable accommodation request. Plaintiff also argues that she lacked knowledge that choosing the LTD option would involve termination. Finally, Plaintiff argues that she has provided sufficient evidence to show that Defendant's explanation for their actions were a pretext for disability discrimination and/or retaliation.

In reply, Defendant asserts that nothing raised by Plaintiff in her response adequately rebuts the legal arguments for summary judgment that are set out in its motion. *See* Reply (Docket No. 44).

## IV. STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). "By its very terms, this standard provides that the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings

6

and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that it believes demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols.*, Inc., 901 F.3d 619, 627–28 (6th Cir. 2018); Rule 56(c)(1)(A). Once the moving party has met this burden, the nonmoving party is not entitled to a trial merely on the basis of allegations but must present evidence supporting its claims or defenses. *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

## V. ANALYSIS

Under the ADA, an employer is prohibited from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). An employer's failure to grant a reasonable accommodation to a disabled employee falls under the ADA's definition of discrimination. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020). An employer is also prohibited from taking adverse employment actions against an employee because of the employee's disability. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317-21 (6th Cir. 2012) (en banc). Finally, like other anti-discrimination statutes, the ADA prohibits an employer from retaliating

7

against an employee who has opposed an unlawful employment practice or has engaged in the EEO process. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).

Plaintiff claims that Defendant violated each of these ADA protections. However, after review of the parties' filings and the record as a whole, the Court finds that summary judgment should be granted to Defendant on each of Plaintiff's claims. As set out below, the evidence supporting Plaintiff's claims, even when viewed in the light most favorable to her as the non-moving party, is not sufficient to permit a reasonable jury to find in her favor. Any factual issues that exist do not rise to the level of genuine issues of material fact that require resolution at trial.

### A. Failure to Accommodate Claim

The Sixth Circuit uses a multi-part test to evaluate failure to accommodate claims at the summary judgment stage:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Tchankpa*, 951 F.3d at 811 (quoting *Kleiber v. Honda Am. Mfg. Inc.*, 485 F.3d 862, 868 (6th Cir. 2020)). The plaintiff also bears the burden of proposing a reasonable accommodation. *Fisher v. Nissan N. Am.*, 951 F.3d 409, 419 (6th Cir. 2020). Because a failure to accommodate claim is necessarily based upon direct evidence, the familiar *McDonnell-Douglas* burden shifting-analysis is not applicable to such a claim. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018).

Defendant argues that Plaintiff cannot show that she was "otherwise qualified" for the full-time CSR position because it is undisputed that she was unable to work-full-time hours. Defendant contends that the ability to work full-time hours is an essential job function of the full-time CSR position. Defendant further argues that Plaintiff cannot show that she was denied a reasonable accommodation. The Court finds that is not necessary to delve into the issue of whether Plaintiff was otherwise qualified because, even assuming that she was, her claim fails due to a lack of evidence that Defendant refused to provide her with a reasonable accommodation.

A "reasonable accommodation" can include job restructuring, part-time or modified work schedules, reassignment to a vacant position, and other similar accommodations for individuals with disabilities. 42 U.S.C. §§ 12111(9)(B). The determination of whether an accommodation is reasonable is individual and particularized to the employee seeking it. *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 782 (6th Cir. 1998). Reassignment may be required as a reasonable accommodation when an employee can no longer perform the functions of her job. *See Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000). A reasonable accommodation "does not include removing an essential function from the position, for that is *per se* unreasonable." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015).

Importantly, the ADA does not require the an employer to "provide the accommodation that the employee requests or prefers." *Trepka v. Board of Educ.*, 28 F.App'x 455, 459-60 (6th Cir. 2002). If a different reasonable accommodation is provided, "an employee is not entitled to a particular reasonable accommodation." *Id*. "[A]n employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996) (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986).

9

In the instant case, the undisputed evidence shows that Defendant provided several accommodations to Plaintiff that allowed her to maintain her full-time CSR position during both the lengthy period when she was unable to work and the period when she returned to work but was unable to work full-time. Plaintiff was initially permitted to take nearly a year-long leave of absence. Upon her return to work in May 2018, Defendant permitted her to work limited, part-time hours while continuing to classify her as a full-time CSR. Defendant further permitted Plaintiff to modify her work schedule by arranging her part-time hours into a split work schedule with a long break between work shifts. Defendant also allowed Plaintiff to use a special chair, computer mouse, arm rest, and sit-stand workstation. Finally, when it became apparent that Plaintiff could not begin to work full-time hours and could not provide an anticipated time frame for her return to full-time hours, Defendant offered to transfer Plaintiff to a part-time CSR position to retain her employment.

In the face of this undisputed evidence, Plaintiff bases her failure-to-accommodate claim upon Defendant's denial of her request to be transferred to a Home-Based CSR position and, implicitly, upon Defendant's refusal to permit her to remain employed in a full-time CSR position while continuing to work part-time hours. The Court finds that neither theory is sufficient to support her claim.

Plaintiff's request to transfer to the Home-Based CSR position was not a request for reasonable accommodation. First, there is no evidence that there was a vacant Home-Based CSR position at the time Plaintiff made the request. A reasonable accommodation under the ADA includes reassignment only to a *vacant* position. 42 U.S.C. § 12111(9)(B) (emphasis added); *Kleiber*, 485 F.3d at 869; *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir.1998); *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997). Plaintiff disputes Defendant's evidence that there was not a vacant position, contending that (1) Defendant was actively recruiting for the position at

the relevant time and (2) Defendant was "changing titles" of new hires from Home-Based CSRs. *See* Response to Defendant's SUMF (Docket Entry No. 42) at 14, ¶ 60. However, Plaintiff fails to create a genuine issue of material fact because her evidence does not actually show that a vacant position existed at the time she made her request. The job advertisements relied on by Plaintiff in support of her argument, *see* Docket Entry No. 38-1, were for positions advertised in the fall of 2019, but Plaintiff's request to Defendant occurred in August 2018. Thus, Plaintiff's evidence fails to show that a vacant position existed in August 2018. Further, although Plaintiff testified in her deposition that some new CSR hires were immediately moved to a Home-Based CSR position, *see* Plaintiff's Deposition (Docket Entry No. 34-1) at deposition pp. 79-82, her testimony on the issue is vague and fails to identify any particular employee who was moved to a Home-Based CSR position during the relevant time period. Plaintiff fails to otherwise support her assertion with any evidence, such as work records or sworn testimony from other individuals, showing that that employees in CSR positions were being switched to Home-Based CSR positions.

Second, even if there were a vacant position or even if CSRs who were hired into the call center were permitted to move to a Home-Based CSR position, Plaintiff fails to provide any evidence that Defendant had a part-time Home-Based CSR position. Although Plaintiff does not admit that the Home-Based CSR position to which she requested a transfer in August 2018 was "full-time," *see* Response to Defendant's SUMF at 14, ¶ 59, the exhibit she relies on describes the position as "Full-Time." *See* Docket No. 38-1 at 2, 6, and 10. The duty to reassign an employee as an accommodation does not require the employer to create a new position that did not previously exist. *Kleiber*, 485 F.3d at 869; *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 730 (6th Cir. 2000); *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 257 (6th Cir. 2000).

The Court also finds no basis upon which to conclude the duty to reasonably accommodate Plaintiff required Defendant to permit Plaintiff to indefinitely remain in the full-time CSR position even though she could not work full-time and had no expected date on which she could return to full-time work. The ADA explicitly states that a reasonable accommodation may include "part-time or modified work schedules[,]" 42 U.S.C. § 12111(9), and when Defendant permitted Plaintiff to temporarily remain in her full-time CSR position despite working less than full-time hours, it was providing her with a reasonable accommodation. However, Defendant was not required under the ADA to permit Plaintiff to indefinitely remain in this temporary position. *See Meade v. AT&T Corp.*, 657 F.App'x 391, 396-97 (6th Cir. 2016) (employer was not required to turn a temporary, light-duty position that was provided to an employee as a reasonable accommodation into a permanent position). Further, the Enforcement Guidelines issued by the EEOC suggest that an employee is not entitled to continue receiving full-time benefits if the employee is provided with a part-time work schedule as an accommodation. *See* EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship, No. 915.002 (Oct. 17, 2002) at Question 23 (if an employee is given a part-time schedule as a reasonable accommodation, the employee "is entitled only to the benefits, including health insurance, that other part-time employees receive.").[9]

When it eventually became apparent that Plaintiff could not work full-time and had no expected date on which she could return to full-time work, it is undisputed that Defendant offered Plaintiff the option of retaining employment through a transfer to an open Part-Time CSR position. This was a reasonable accommodation in light of the facts of this case. *See Pattison v. Meijer*, 897 F.Supp.1002, 1008 (W.D. Mich. 1995) (employer's offer of reassignment from full-time position to part-time position was a reasonable accommodation even though part-time position was for lesser

---

[9] Retrievable at http://www.eeoc.gov/policy/docs/accommodation.html.

pay and did not include full-time benefits); *Rahman v. Museum of Nat. Hist.*, City-of New York, 2012 WL 1077679, at *10 (E.D.N.Y. Mar. 30, 2012) (employer's offer of a modified, reduced hours schedule is a reasonable accommodation even though it will result in a reduction in benefits and salary). However, Plaintiff rejected this option. Plaintiff's rejection of this offer limits her ability to pursue a claim that Defendant failed to provide her with a reasonable accommodation. *See Hankins*, 84 F.3d at 802 ('we hold that plaintiff's refusal to accept available reasonable accommodations precludes her from arguing that other accommodations should also have been provided."); *Pattison*, 897 F.Supp. at 1008 (employee's rejection of proffered reasonable accommodation precluded ADA claim).

Finally, the Court finds no merit in Plaintiff's argument that Defendant violated its duty to engage in an interactive process regarding accommodations. "[O]nce an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Blanchet v. Charter Communications, LLC*, 27 F.4th 1221, 1232 (6th Cir. 2022) (quoting *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018)). The purpose of the duty is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Rorrer*, 743 F.3d at 1040 (quoting *Kleiber*, 485 F.3d at 871). However, the duty to engage in an interactive process becomes an independent violation of the ADA only if the employee shows that he or she proposed a reasonable accommodation. *Rorrer*, 743 F.3d at 1041. As discussed above, Plaintiff did not request a reasonable accommodation and, therefore, Defendant did not fail to engage in an interactive process. Furthermore, the undisputed evidence clearly shows Defendant to have repeatedly engaged in the interactive process regarding Plaintiff's disability and her need for accommodations and to have actually provided her with multiple reasonable accommodations.

13

### B. Disparate Treatment Claim

Plaintiff claims that Defendant unlawfully discriminated against her based on her disability when it terminated her employment. To establish this claim, Plaintiff must produce either direct evidence showing that Defendant discriminated against her because of her disability or produce indirect, circumstantial evidence that is sufficient to raise an inference that discrimination occurred. *Hedrick v. W. Reserve Care Sys.,* 355 F.3d 444, 452 (6th Cir. 2004).

**1. Direct Evidence**

Direct evidence is that which "requires the conclusion that unlawful [discrimination] was a motivating factor in the employer's action. Specifically, direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 806 (E.D. Tenn. 2016), *aff'd*, 899 F.3d 428 (6th Cir. 2018), (citing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)).

Plaintiff contends that she has direct evidence of discrimination because her separation notice states that "Long-Term Disability Benefit Option" was the reason for her discharge. The Court disagrees. his brief statement merely memorializes that the LTD option, which included a separation from employment, was chosen by Plaintiff instead of accepting the part-time CSR position. The acknowledgment of this factual matter in the Notice simply does not constitute evidence of an unlawful act and does not reflect that Defendant acted with a discriminatory animus. To reach such a conclusion requires the drawing of an inference and, accordingly, the statement is not direct evidence of discrimination. *See Equal Emp. Opportunity Comm'n v. Clarksville Health Sys., G.P.*, 617 F.Supp.3d 844, 857 (M.D. Tenn. 2022).[10]

---

[10] Plaintiff's separation notice is materially distinguishable from those at issue in *Coffman v. Robert J. Young, Co. Inc.,* 871 F.Supp.2d 703, 714-715 (M.D.Tenn. 2012), and *Burress v. City of*

14

## 2. Indirect Evidence

In the absence of direct evidence of discrimination, the Court applies the *McDonell Douglass* burden-shifting inquiry. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023). Under this inquiry, Plaintiff has the initial burden of establishing a *prima facie* case. *Id*. If Plaintiff meets her burden, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the challenged action. *Id*. Once Defendant satisfies this burden of production, Plaintiff bears the burden of showing by a preponderance of the evidence that the proffered explanation is a pretext for discrimination. *Id.*

To show a *prima facie* case of discrimination, Plaintiff must first establish that (1) she is disabled, (2) she is otherwise qualified for the position, with or without reasonable accommodation, (3) she suffered an adverse employment decision, (4) Defendant knew or had reason to know of her disability, and (5) the position either remained open while Defendant sought other applicants or Plaintiff was replaced. *Hrdlicka*, *supra*; *Keogh v. Concentra Health Servs., Inc.*, 752 F.App'x 316, 324 (6th Cir. 2018). Although Defendant argues that Plaintiff cannot establish a *prima facie* case, the Court finds it unnecessary to analyze this argument because, even if the Court assumes that Plaintiff satisfied her initial burden of showing a *prima facie* case, her claim readily fails at the final stage of the burden-shifting framework.

Defendant asserts that Plaintiff was presented with two options about her employment status in light of her inability to return to full-time work and was terminated from employment only

---

*Franklin, Tenn*., 809 F.Supp.2d 795, 811 (M.D.Tenn 2011), two cases relied on by Plaintiff for her direct evidence argument. The termination letters in those case specifically stated that the plaintiffs were terminated "due to her long term disability, *Coffman*, 871 F.Supp.2d at 714, and because "you are unable to return to perform the essential functions of your job at this time. Should you recover from your medical condition and no longer be disabled, you may wish to re-apply for employment."

because she chose the option of taking LTD benefits with a separation from employment. This explanation satisfies Defendant's burden of proffering a legitimate, non-discriminatory reason for its action, and Plaintiff must therefore show that this explanation is pretext for unlawful disability discrimination.

Upon Defendant's proffer of its legitimate, nondiscriminatory reason, Plaintiff must present proof that the stated reason is pretextual in order to create a genuine dispute regarding her claim of disability discrimination. *Hrdlicka*, 63 F.4th at 569. To establish pretext, Plaintiff must show Defendant's proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to explain the adverse action. *Id*. Ultimately, Plaintiff must produce "sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against [her]." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (quotations omitted).

Plaintiff offers only a cursory argument that Defendant's proffered reason was pretextual and she fails to present a substantive analysis of pretext based upon the evidence in the record. *See* Memorandum in Response at 13-14. Given the lack of argument and an evidentiary showing on this critical burden that falls upon Plaintiff, summary judgment is warranted in favor of Defendant on this claim. Defendant's decision clearly had a basis in fact and was motivated by Plaintiff's choice of the two options. Further, there is nothing in the record that supports a conclusion that Defendant's reliance on Plaintiff's choice was insufficient to support its decision. A jury could neither reasonably reject Defendant's explanation nor infer that Defendant intentionally discriminated against Plaintiff because of her disability.

---

*Burress*, 809 F.Supp.2d at 811. Such explicit statements are not present in the Plaintiff's separation notice.

16

**C. Retaliation Claim**

Plaintiff claims that Defendant terminated her from her employment as an act of retaliation against her because of her requests for a reasonable accommodation. Much like a discrimination clam, a retaliation claim can be proven with direct evidence or through indirect, circumstantial evidence via the burden-shifting analysis. *See Rorrer*, 743 F.3d at 1046. Whatever the method of proof that is used, a plaintiff must ultimately "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer" in order to prevail on a retaliation claim. *E.E.O.C.*, 782 F.3d at 770 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).

Plaintiff contends that her separation notice constitutes direct evidence of retaliation. *See* Memorandum in Response at 18. The Court disagrees for essentially the same reason upon which its finding that the separation notice does not constitute direct evidence of disability discrimination is based. The notice simply does not directly state anything that can be interpreted as evidence of a retaliatory animus. Reaching such a conclusion would require inferential steps. Accordingly, the notice does not constitute direct evidence of retaliation.

To establish retaliation through the burden-shifting analysis requires Plaintiff to first prove a *prima facie* by showing that: (1) she engaged in protected activity; (2) her engagement in that protected activity was known to her employer; (3) her employer took a materially adverse action against her; and (4) a causal link exists between her engagement in the protected activity and the adverse action. *Wilbanks v. Ypsilanti Cmty. Schs*, 742 F. App'x 84, 87 (6th Cir. 2018) (citing *A.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013). If a *prima facie* case is shown, Defendant must articulate a legitimate non-retaliatory reason for the adverse action, after which the

burden shifts back to Plaintiff to prove by a preponderance of the evidence that the reason proffered by Defendant was not the true reason but was merely a pretext for retaliation. *Id.*

Although Defendant argues that Plaintiff cannot establish a *prima facie* case, the Court finds it unnecessary to analyze this argument because, even if the Court assumes that Plaintiff satisfied her initial burden of showing a *prima facie* case, her claim readily fails at the final stage of the burden-shifting framework for essentially the same reason as her discrimination claim fails at the final stage. That is, that Plaintiff fails to present an evidentiary based argument that would be sufficient for a reasonable jury to find that Defendant terminated Plaintiff from employment as an act of retaliation against her for seeking a reasonable accommodation. It is undisputed that after nearly a year of leave and five months of limited-hours work, Plaintiff's doctor would not clear her to work full-time hours. Defendant offered Plaintiff the options of (1) transferring to a part-time CSR position or (2) taking LTD benefits accompanied by a separation from employment. Plaintiff rejected the first option shortly before changing her mind, and then failed to follow-up when Defendant's HR attempted to reach her about discuss the matter. The Court finds that the record does not support any inference to the contrary, and that there is no evidence that would support a conclusion that Defendant acted with a retaliatory animus in terminating her employment. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## RECOMMENDATION

For the reasons set out above, it is respectfully RECOMMENDED that the motion for summary judgment (Docket Entry No. 34) of Defendant Cellco Partnership, d/b/a Verizon Wireless be GRANTED and that this action be DISMISSED WITH PREJUDICE as to all claims.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge